1  Lawrence S. Gordon (Cal. Bar No. 302330)
2  (lgordon@cozen.com)
   James A. Gale (Fla. Bar No. 371726)
3  (jgale@cozen.com)
   Samuel A. Lewis (Fla. Bar No. 55360)
4  (slewis@cozen.com)
5  Ashley G. Kessler (New York Bar No. 4834339)
   (akessler@cozen.com)
6  **COZEN O'CONNOR**
7  575 Market Street, Suite 2200
   San Francisco, CA 94105
8  Telephone: 415-593-9646
   Facsimile: 415-692-3452
9
10 *Attorneys for Plaintiff Ripple Labs, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| RIPPLE LABS, INC., D/B/A RIPPLE A DELAWARE CORPORATION, | Case No. _____ |
|---|---|
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND CYBERSQUATTING** |
| vs. | |
| PIXEL LABS, INC., A DELAWARE CORPORATION, RAZMIG HOVAGHIMIAN, | **DEMAND FOR JURY TRIAL** |
| Defendants | |

COMPLAINT                                                           CASE NO. _____

Plaintiff RIPPLE LABS, INC. d/b/a Ripple (hereinafter, the "Plaintiff" or "Ripple"), as its complaint against Defendants PIXEL LABS, INC. ("Pixel") and RAZMIG HOVAGHIMIAN ("Hovaghimian"), (collectively, the "Defendants"), alleges, as follows:

### NATURE OF THE ACTION

1. This is an action seeking injunctive relief and damages arising from the Defendants' violation of the Lanham Act, the Anticybersquatting Consumer Protection Act ("ACPA"), California's unfair competition statute (California's Business and Professions Code section 17200), and common law unfair competition.

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff Ripple is a Delaware corporation residing in and having a principal place of business in San Francisco, California.

3. Defendant PIXEL LABS, INC. ("Pixel") is a Delaware corporation having a principal place of business in San Francisco, California.

4. Defendant, RAZMIG HOVAGHIMIAN ("Ramzig" or "Hovaghimian"), upon information and belief, is a citizen of California and is the Chief Executive Officer of Pixel.

5. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338.

7. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) & (3).

9. The Court may properly exercise personal jurisdiction over the Defendant Pixel because Defendant does business in this District, has appointed a registered agent to receive service of process in this State, has availed themselves of the benefits and protections of the State of California, Ripple's claims arise out of Defendant's contacts with the State of California, and Defendant's conduct has resulted in injury to Ripple in California. The Court may properly exercise personal jurisdiction over Defendant Ramzig because Ramzig does business in this District, has availed himself of the benefits and protections of the State of

1  California, Ripple's claims arise out of Ramzig's contacts with the State of California, and
2  Ramzig's conduct has resulted in injury to Ripple in California

## GENERAL ALLEGATIONS

### Plaintiff Ripple and the RIPPLE Trademark

10. Ripple has developed, maintained, operated and offered in commerce a hugely successful cross-border/international payment technology for regulated financial institutions. This includes, but is not limited to, licensable computer software and computer programs for for banks that electronically facilitates cross-border/international payments under the trademark RIPPLE.

11. Specifically, Ripple's software facilitates the transfers of funds overseas through regulated financial institutions, e.g., banks. Banks install the Ripple software in their servers and use it to communicate payment information with other banks that have also installed the Ripple software.

12. Among other applications and registrations, Ripple is the exclusive owner of all rights, title, and interest in the following U.S. Trademarks:

   a) No. 4,532,727 for the word mark RIPPLE in international class 038 with a first use in commerce date of August 31, 2004;

   b) No. 4,532,726 for the word mark RIPPLE in in international class 009 with a first use in commerce date of August 31, 2004;

   c) No. 4,528,772 for the word mark RIPPLE in international class 036 with a first use in commerce date of August 31, 2004;

   d) No. 4,532,724 for the design mark RIPPLE in international class 038 with a first use in commerce date of January 2013;

   e) No. 4,528,771 for the design mark RIPPLE in international class 036 with a first use in commerce date of January 2013;

   f) No. 4,532,723 for the design mark RIPPLE in international class 009 with a first use in commerce date of January 2013;

g) No. 4,453,543 for the word mark RIPPLE in international class 036 with a first use in commerce date of August 31, 2004;

h) No. 4,744,899 for the word mark RIPPLE TRADE in international class 038 with a first use in commerce date of May 5, 2014;

i) No. 4,744,898 for the word mark RIPPLE TRADE in international class 036 with a first use in commerce date of May 5, 2014;

j) No. 4,453,376 for the word mark RIPPLE COMMUNICATIONS in international class 036 with a first use in commerce date of July 31, 1998;

k) No. 4,390,999 for the word mark RIPPLE COMMUNICATIONS in international class 038 with a first use in commerce date of July 31, 1998;

l) No. 4,867,705 for the word mark RIPPLE TRADE in international class 009 with a first use in commerce date of May 5, 2014;

m) No. 4,845,538 for the word mark RIPPLE LABS in international class 036 with a first use in commerce date of October 16, 2013;

n) No. 4,841,452 for the word mark RIPPLE LABS in international class 038 with a first use in commerce date of October 16, 2013;

o) No. 4,953,955 for the design mark RIPPLE LABS in international class 038 with a first use in commerce date of October 16, 2013; and

p) No. 4,949,375 for the design mark RIPPLE LABS in International Class 036 with a first use in commerce date of October 16, 2013.

Ripple Labs is also the exclusive owner of any and all common law rights and goodwill associated with these trademarks and other trademarks attached hereto (collectively, the "RIPPLE Trademarks"). Attached hereto as Exhibits 1 through 16 are true and correct copies of the Certificates of Registration for the RIPPLE Trademarks.

13. Under the RIPPLE Trademarks, Ripple offers *inter alia* software and services whereby regulated financial institutions can send funds internationally far more quickly and efficiently than current technology allows, e.g., SWIFT messaging.

14. Ripple also owns the rights to the following domain names: ripple.com, rippletrade.com, ripplelabs.com, ripple-project.org and ripplepay.com, among others, and the goodwill associated therewith.

15. By virtue of continuous and extensive use, the RIPPLE Trademarks have acquired substantial goodwill.

16. Ripple and its predecessors-in-interest have continuously used and extensively promoted the RIPPLE Trademarks throughout the United States and worldwide since long before Defendants' unauthorized and confusingly similar use of Plaintiff's RIPPLE Trademarks. Indeed, Ripple has expended a tremendous amount of time, effort and money to continuously and widely advertise and promote its network computer services, computer programs and software under the RIPPLE Trademarks, including but not limited through Bloomberg, various trade shows, Ripple's websites, third-party websites, and through social media outlets such as Facebook.

17. As a result, long before Defendants' unauthorized and confusingly similar use of Ripple's RIPPLE Trademarks, Ripple's RIPPLE Trademarks had become widely recognized among the consuming public of the United States as a trusted platform offered by Ripple.

18. Unfortunately, Ripple's success has attracted unscrupulous infringers such as the Defendant who are anxious to capitalize on the popularity of the RIPPLE Trademarks.

**Defendants and Their Wrongful Conduct**

19. In the Fall of 2015, long after Ripple and its predecessors had established rights and goodwill in the RIPPLE Trademarks, Defendant Hovaghimian, on behalf of himself and Pixel, and recognizing Ripple's prior rights in the RIPPLE Trademarks, reached out to Ripple seeking permission to use the trademark RIPPLE in connection with a venture that the Defendants hoped to launch.

20. When Defendant Hovaghimian initially approached Ripple, Hovaghimian acknowledged Ripple's prior rights in the RIPPLE Trademarks. Defendant Hovaghimian also

indicated that if Ripple had any problem with the Defendants using the mark, Defendant's new venture would initiate the brand under a different mark.

21. Ripple indicated that certain, limited uses of the RIPPLE mark might be acceptable, but the terms of the Defendants' usage would have to be clearly set forth in a written agreement.

22. Over the course of approximately eight (8) months of negotiations, the Defendants nevertheless, without permission or authority, improperly adopted and commenced use of one or more of the RIPPLE Trademarks in connection with a mobile application and online platform for the posting of news stories, photos, videos and articles (the "Infringing Mark").

23. Upon information and belief, Defendant Hovaghimian, as a senior officer of Pixel, participated in, supervised and directed or otherwise had the ability to supervise and control the misuse and infringement of the RIPPLE Trademarks on behalf of Pixel, including but not limited to the registration and use of an Internet domain name that incorporates one or more of the RIPPLE Trademarks, namely ripple.co, and the creation of the Infringing Website, ripple.co, as alleged below. In light of Defendants' efforts to unsuccessfully obtain prior permission from Ripple to use the RIPPLE Trademarks, there can be no doubt that at the time of commencing their use of the Infringing Mark, the Defendants knew of Ripple's RIPPLE Trademarks and superior rights in same.

24. Likewise, at the time Defendants registered the ripple.co domain name, the Defendants knew of Ripple's RIPPLE Trademarks and superior rights in same.

25. Defendants are using the Infringing Mark on and in connection with the online platform operated by the Pixel at the website, ripple.co (the "Infringing Website"). Additionally, Defendants Pixel and Hovaghimian are wrongfully using the Infringing Mark on social media, including Facebook, Twitter and Instagram.

26. Defendants operate and control the Infringing Website and use of the Infringing Mark.

27. Defendant Pixel's registration and use of the ripple.co domain name constitutes cybersquatting.

28. Well after Pixel had become aware of Ripple's RIPPLE Trademarks, and while continuing to acquire either a license from, or co-existence agreement with Ripple, Defendants attempted to obtain a trademark registration in an effort to justify its willful infringement of the RIPPLE Trademarks, and in an effort to fraudulently raise millions of dollars from investors and potential investors by falsely asserting to these investors and potential investors that Defendants had rights to use the RIPPLE Trademarks.

29. In furtherance of that scheme, upon information and belief, Pixel acquired the rights to U.S. Reg. No. 4,623,819 for the design mark RN RIPPLE NEWS from Ripple News, Inc., and the assignment was recorded with the U.S. Patent and Trademark Office on or about May 18, 2016. The first use date of the design mark is January 28, 2014, long after Ripple had acquired rights in the RIPPLE Trademarks. As such, the RN RIPPLE NEWS mark is junior and inferior to Ripple's trademark rights.

30. As further evidence of the bad faith scheme associated with Pixel's acquisition of the RN RIPPLE NEWS design mark, upon information and belief, Defendants do not actually use the design mark. Instead, they have continued to openly and notoriously use the RIPPLE Trademarks, without permission and without a license.

31. Upon information and belief, Defendant Pixel's infringing services are calculated to and actually do deceive consumers about the source and quality of the services that the Defendant offers.

32. As part of this calculated effort, Defendants actively attempted to conceal the true identity of the person or entity responsible for the ripple.co domain name. Instead of registering the ripple.co domain name in the name of a legitimate business venture or the owner of the business—e.g., Pixel or Hovaghimian—Defendants used WhoisGuard, a service that allows domain name registrants to conceal the true identity of the person or entity who registered a domain name. Thus, instead of allowing people to readily ascertain who registered ripple.co, or to see that ripple.co was never associated with Ripple and its founder, Chris

1  Larsen, the Defendants ensured that the public would only see that ripple.co is registered to
2  "WhoisGuard Protected" with the only associated address being a Panamanian post office box.

3  33.  In addition, by utilizing the RIPPLE Trademark, Defendants have caused and
4  are continuing to cause actual confusion among consumers.  For example, it was recently
5  announced that Defendant Pixel acquired Hoodline, another small startup. *See* Exhibit 17.  By
6  virtue of Defendants' unauthorized use of the RIPPLE Trademarks, Techcrunch.com reported
7  the acquisition and simultaneously identified Plaintiff Ripple as being the entity involved. *See*
8  *Id.*  As published, the Techcrunch.com article appears as below with a corresponding
9  "CrunchBase" summary of the entities involved in the transaction, as can be seen in the
10  following excerpt from Exhibit 17:



When identifying the "Ripple" involved in the transaction, TechCrunch identifies "Ripple Labs," as opposed to "Pixel Labs," and provides background regarding Plaintiff Ripple. Indeed, the name "Pixel Labs" does not appear anywhere in the TechCrunch article.

34.  News of Defendant Pixel's acquisition of Hoodline also resulted in various other third-party publications on the Internet, including several items published by various individuals to Twitter.  Some of the "tweets" referenced the TechCrunch article attached as Exhibit 17, while others referenced "Ripple".  One example of such publications, available on

the web at https://twitter.com/ArtWerxHaus/status/761224223037677569, appears as follows:



This tweet includes Plaintiff Ripple's twitter handle ("@Ripple"), and that ArtWerxHaus has been "waiting 3 yrs for @Ripple to make it into headlines." The "3 yrs" reference is also significant in that Defendant Pixel has **not** been in existence for 3 years. Upon information and belief, the "3 yrs" reference, combined with the @Ripple twitter handle, was intended to refer to Plaintiff Ripple.

35. As a result of Defendants' wrongful conduct, Defendant Pixel has harmed, and is continuing to harm, consumers and irreparably damaging the goodwill associated with Ripple and the RIPPLE Trademarks.

36. In addition to trading off the goodwill associated with Ripple and the RIPPLE Trademarks, Defendants have harmed Ripple through other wrongful conduct.

37. Using Ripple's RIPPLE Trademark, Defendants launched a website purporting to deliver local news. However, as has been reported in the press, Defendants wrongfully infringed third-party copyrights by cutting and pasting local news reports from other sites. This infringing conduct was reported by Recode. *See* Exhibit 18. The same press reports recounted that the Defendants engaged in "about 3,000 copyright violations," and that the Defendants had stolen content from "Gothamist, DNAInfo, and other outlets like Politico New York." Other accounts were far more blunt, referring to Defendants' conduct as "theft" and "Ripple? More Like Rip-off." *See* Exhibits 19 and 20.

38. In the aftermath of this negative press, Plaintiff Ripple received an inquiry as to whether it was involved in such widespread infringement, or was otherwise associated with those responsible for the infringement.

39. Ripple has performed all conditions precedent necessary to maintain the instant action that have not been otherwise waived or excused.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## UNDER 35 U.S.C. § 1114

40. Ripple repeats and re-alleges the allegations in paragraphs 1-39 as if set forth fully herein.

41. Defendants' use of the Infringing Mark infringes upon Ripple's superior rights in the federally registered RIPPLE Trademarks.

42. Defendants have knowingly and without the consent of Ripple used the Infringing Mark in commerce in connection with a mobile application and online platform for the posting of news stories, photos, videos and articles, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States as to the source, sponsorship and/or association of Defendant Pixel's goods or services.

43. Defendants' infringing acts include, without limitation, the distribution of advertising bearing the Infringing Mark; the promotion of services bearing the Infringing Mark on one or more internet websites, Instagram, Facebook, Twitter, etc., the use the Infringing Website itself, and the direct, indirect, or cooperative offering of services bearing the Infringing Mark in the United States.

44. Under the circumstances of this case, the Defendants' infringing activities constitute intentional, willful infringement in violation of Ripple's rights under 15 U.S.C. §1114, and have caused and, if not enjoined, will continue to cause Ripple immediate and irreparable harm.

45. Unless enjoined by this Court under 15 U.S.C. § 1116 and the equitable powers of this Court, Defendants will persist in their activities, thereby causing Ripple additional irreparable harm.

46. Ripple has also sustained actual damages as a result of the Defendants' infringing activities in an amount to be ascertained at trial.

47. Based upon Defendants' activities, this case qualifies for: a disgorgement of Defendants' profits; actual damages; and treble damages, together with attorney's fees pursuant to 15 U.S.C. § 1117(b), or at the election of Ripple, statutory damages pursuant to 15 U.S.C. § 1117(c).

## COUNT II
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125

48. Ripple repeats and re-alleges the allegations in paragraphs 1 through 39 above as if fully set forth herein.

49. Ripple is the owner of the valid and protectable RIPPLE Trademarks, as evidenced by the federal trademark registrations attached hereto as Exhibits 1 through 1- 16.

50. Ripple's use of the RIPPLE Trademarks has been and continues to affect interstate commerce.

51. Ripple's first use of the RIPPLE Trademarks was prior to Defendants' unauthorized use of the Infringing Mark.

52. There is a likelihood of consumer confusion caused by Defendants' unauthorized use of the Infringing Mark, as evidenced by the actual confusion that has already occurred as a result of Defendants' wrongful actions.

53. By virtue of Defendants' prior requests to Plaintiff for permission to use the RIPPLE marks, Defendants' unauthorized use of the Infringing Marks was done knowingly, willfully, intentionally, in bad faith, and constitutes a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendants' acts are greatly and irreparably damaging to Ripple and its RIPPLE Trademarks, and will continue to be greatly and irreparably damaging to Ripple and its RIPPLE Trademarks unless enjoined by this Court, as a result of which, Ripple is without an adequate remedy at law.

55. Based upon Defendants' activities, this case qualifies for: a disgorgement of Defendants' profits; actual damages; and treble damages, together with attorney's fees pursuant to 15 U.S.C. § 1117.

## COUNT III

## CYBERSQUATTING IN VIOLATION OF THE ACPA, 15 U.S.C. § 1125(d)

56. Ripple repeats and re-alleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

57. The RIPPLE Trademarks are presumed valid, enforceable, and entitled to protection under the Lanham Act. Moreover, the RIPPLE Trademarks were presumed to be valid and enforceable trademarks at the time that Defendants registered the infringing domain name, ripple.co and at the time that the Defendants created the Infringing Website operating in association with that infringing domain name.

58. The ripple.co domain name and the Infringing Website both incorporate and use the Infringing Mark. The Infringing Mark is confusingly similar to Ripple Labs' RIPPLE Trademarks. Indeed, the mark "RIPPLE" is incorporated in the domain name verbatim.

59. Defendants have registered, used and maintained the ripple.co domain and the Infringing Website with the bad faith intent to profit from them.

60. Defendants' activities violate the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

61. Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Ripple's business, reputation, and goodwill. Ripple has no adequate remedy at law because monetary damages are inadequate to compensate it for the injuries caused by Defendant.

62. Upon information and belief, Defendants' unlawful registration, maintenance and use of the ripple.co domain name and Infringing Website has been intentional and willful.

63. Ripple is entitled to injunctive relief, and also entitled to recover Defendants' profits, statutory damages and/or actual damages suffered by Ripple and the costs of this action pursuant to 15 U.S.C. § 1117(a). Ripple is also entitled to injunctive relief, including a Court

order of forfeiture or cancellation of the accused domain name, ripple.co, or the transfer of the accused domain name to Ripple pursuant to 15 U.S.C. § 1125(d)(1)(C).

64. Based upon Defendants' activities, this case qualifies for a judgment of treble damages, together with attorney's fees pursuant to 15 U.S.C. § 1117.

### COUNT IV
### CANCELLATION OF REGISTRATION PURSUANT TO 15 U.S.C. § 1119

65. Ripple repeats and re-alleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

66. Pixel is the owner of U.S. Reg. No. 4,623,819 for the design mark RN RIPPLE NEWS.

67. The RN RIPPLE NEWS design mark has a first use date of January 28, 2014, and it is therefore junior and inferior to Ripple's RIPPLE Trademarks.

68. The RN RIPPLE NEWS design mark incorporates one or more of Ripple's RIPPLE Trademarks verbatim, and therefore, is infringing of Ripple's RIPPLE Trademarks.

69. In light of the incorporation in the RN RIPPLE NEWS design mark of a registered trademark, the registration for the RN RIPPLE NEWS design mark should never have issued.

70. Pursuant to 15 U.S.C. § 1119, this Court has the power to determine the right to registration and to Order, *inter alia,* the cancellation of registrations, including the RN RIPPLE NEWS design mark.

### PRAYER FOR RELIEF

Plaintiff Ripple prays for judgment in its favor as follows:

    A. That Defendants, including its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with the Defendants be preliminarily and permanently enjoined from:

        1. Using the RIPPLE Trademarks, and/or any confusingly similar variation thereof, including but not limited to RIPPLE and RIPPLE NEWS;

2. Passing off or falsely designating the origin of the RIPPLE Trademarks and from injuring Ripple's goodwill and reputation;

3. Doing any other act or thing likely to induce the belief that the Defendant Pixel's services are in any way connected with, sponsored, affiliated, licensed, or endorsed by Ripple;

4. Registering, using or trafficking in any domain name that is identical or confusingly similar to the RIPPLE Trademarks, including but not limited to ripple.co; and

5. Using or displaying the RIPPLE Trademarks or any variation thereof, including without limitation the word mark RIPPLE or RIPPLE NEWS, for goods or services in any location, circumstance or environment, including on the Internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendant and its goods or services with Ripple.

B. That Defendants forfeit, cancel or transfer the ripple.co domain name, and any other domain name containing "ripple" therein, to Ripple.

C. That Defendants offers up for destruction all products and marketing materials bearing the mark RIPPLE, or any confusingly similar variation thereof, including but not limited to the word mark RIPPLE, pursuant to 15 U.S.C. §1118.

D. That Defendants, in accordance with 15 U.S.C. §1116(a), be directed to file with this Court, and serve upon Ripple within thirty (30) days after service of a permanent injunction, a verified report setting forth in detail the manner and form in which Defendant has complied with the permanent injunction.

E. That Ripple recover its actual damages sustained as a result of Defendants' wrongful actions.

F. That Ripple recover statutory damages of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d).

G. That Ripple recover Defendants' profits made as a result of Defendants' wrongful actions, as set forth herein.

H. That Ripple recover up to three (3) times its actual damages and/or Defendants' profits in accordance with 15 U.S.C. §1117(a).

I. That this case be deemed an exceptional case under 15 U.S.C. §§1117 and that Defendants be deemed liable for and ordered to reimburse Ripple for its reasonable attorney's fees.

J. That Ripple be awarded exemplary damages for Defendants' willful and intentional acts.

K. That Ripple recover its attorneys' fees and costs.

L. That the Director of Trademarks, U.S. Patent and Trademark Office, be directed to cancel U.S. Reg. No. 4,623,819 for RN RIPPLE NEWS.

M. That Ripple recover such further relief to which it may be entitled and that this Court may deem just and proper.

## JURY DEMAND

Ripple Labs hereby demands trial by jury on all issues so triable as a matter of right.

Dated: August 19, 2016

Respectfully submitted,

By: _____
Lawrence S. Gordon
(lgordon@cozen.com)
Attorneys for Plaintiff Ripple Labs, Inc.