Exhibit A

## SETTLEMENT AND TRADEMARK COEXISTENCE AGREEMENT

This Settlement and Trademark Coexistence Agreement (the "Agreement") is entered into as of the last date of signature below (the "Effective Date") by and between on the one hand, **Pixel Labs, Inc.**, a Delaware corporation with a principal address of 2407 Harrison Street #3, San Francisco, CA 94110 ("Pixel Labs") and Razmig Hovaghimian, an individual with an address of ███████████████████████, and on the other hand, **Ripple Labs, Inc**., ("Ripple Labs") a Delaware corporation with a principal address of 268 Bush Street, No. 2724, San Francisco, CA 94104 ("Ripple Labs") (collectively, the "Parties," and each separately a "Party").

**WHEREAS**, Ripple Labs offers various goods and services in connection with global financial settlement solutions and provides, *inter alia,* financial transaction software (collectively, the "Ripple Labs' Goods and Services") under various RIPPLE and RIPPLE-formative marks (collectively, the "Ripple Labs' Marks");

**WHEREAS,** Ripple Labs owns various trademark applications and registrations relating to the same, as set forth in **Exhibit A**;

**WHEREAS,** Pixel Labs offers a mobile application and online platform for users to find and post news stories (including pictures, videos and articles) directly and from partners (collectively, the "Pixel Labs Goods and Services") under the mark RIPPLE NEWS, and Pixel Labs also uses the trademark RN RIPPLE NEWS, which is registered in a stylized form as set forth on **Exhibit B;** (the RIPPLE NEWS mark and the RN RIPPLE NEWS marks, whether or not there is a space between "ripple" and "news," are collectively referred to herein as Pixel Labs' "RIPPLE NEWS Mark");

**WHEREAS**, on August 19, 2016, Ripple Labs filed a lawsuit against Pixel Labs and Razmig Hovaghimian, in the United States District Court for the Northern District of California styled *Ripple Labs, Inc. v. Pixel Labs, Inc. et al*, Case No. 3:16-cv-04788-JCS (the "Lawsuit"), and Pixel Labs and Mr. Hovaghimian have not yet filed a response to the lawsuit but deny the allegations in the lawsuit; and

**WHEREAS**, the Parties have now exchanged information regarding their respective goods and services and uses of their respective Marks, and the Parties are desirous of avoiding confusion between their respective marks to the extent that the Parties can do so by complying with the terms of this Agreement;

**NOW THEREFORE**, in consideration of the foregoing and of the mutual promises and covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and without any admission of fault, liability or the validity of any asserted claims, the Parties agree as follows:

1.      **Trademark Coexistence Provisions and Undertakings.**

(a)      Pixel Labs acknowledges that the Ripple Labs' Marks are valid and enforceable Marks owned exclusively by Ripple Labs in connection with the Ripple Labs' Goods and Services and any reasonably related future goods and services throughout the world.  Within two (2) weeks of the Effective Date (which will be defined as the "Transition Date"), and except as provided below, Pixel Labs will not use the mark RIPPLE as a trade name, trademark or service mark, whether with or without a design element, in connection with any present, future or related goods and services, including without limitation the Pixel Labs Goods and Services.  Further, Pixel Labs will stop using (i.e. posting content) at the URL ripple.co within two (2) weeks of the Effective Date.  Additionally Pixel Labs has renamed its current mobile app to RIPPLE NEWS, and will not in the future call the app simply "RIPPLE."  Nothing in this Agreement shall prevent Pixel Labs from using the Pixel Labs' RIPPLE NEWS Mark as a trademark or source identifier in connection with the Pixel Labs Goods and Services.  Pixel Labs will not use the Pixel Labs' RIPPLE NEWS Mark as a trade name, trademark or service mark, whether with or without a design element, in connection with the Ripple Labs Goods and Services or on any related goods and services. Pixel Labs is permitted to use its social media handles/usernames that include "Ripple News."  For avoidance of doubt, Pixel Labs agrees it will never use the word "Ripple" alone as an identifier of source, trademark, trade name, or as the name of its products or services, but will always use "Ripple" in conjunction with, and adjacent to the word "News," appearing in a similarly-sized font.  Pixel Labs shall not contest, object to, or otherwise challenge Ripple Labs' use of, application for, or registration of the Ripple Labs' Marks or any future marks containing the term "RIPPLE" (other than RIPPLE NEWS) in connection with the Ripple Labs' Goods and Services or any other goods and services that are either related to the present Ripple Labs' Goods and Services, or which are not related to Pixel Labs' Goods and Services. For the avoidance of doubt, nothing in this Agreement shall prevent Ripple Labs from publishing, electronically or otherwise, a newsletter relating to the Ripple Labs' Goods and Services, and Pixel Labs shall not challenge the use of the Ripple Labs' Marks in connection with such goods and services.  Pixel Labs herein agrees to cooperate and execute any further written consents or other documents that may be reasonably requested in connection with Ripple Labs' application for, or registration of any Ripple Labs' mark in connection with the present or future Ripple Labs goods and services.  Each Party will bear its own costs and attorney's fees in connection with the obligations of this provision.

(b)      Subject to the provisions of this Agreement, Ripple Labs shall not challenge such use of the Pixel Labs' RIPPLE NEWS Mark in connection with the Pixel Labs Goods and Services so long as the term RIPPLE is always followed by and adjacent to the term NEWS, and "RIPPLE" and "NEWS," appearing in a similarly-sized font.  Ripple Labs shall not contest, object to, or otherwise challenge Pixel Labs' use of, application for, or registration of Pixel Labs' RIPPLE NEWS Mark in connection with the Pixel Labs' Goods and Services.  Ripple Labs herein agrees to cooperate and execute any further written consents or other documents that may be reasonably requested in connection with Pixel Labs' application for, or registration of Pixel Labs' RIPPLE NEWS Mark in connection with the Pixel Labs Goods and Services.  Each Party will bear its own costs and attorney's fees in connection with the obligations of this provision. Ripple Labs will not use the Ripple Labs' Marks as a trade name, trademark or service mark, whether with or without a design element, in connection with the Pixel Labs Goods and Services as described in this Agreement. Ripple Labs also shall not contest, object to, or otherwise

2.

challenge Pixel Labs' current use of, application for, or registration of the mark RN RIPPLE NEWS as shown in U.S. Reg. No. 4,623,819.

(c)     Nothing in this Agreement shall prevent Pixel Labs from owning and using the domain name ripplenews.com to support its news site.

(d)     Other than as set forth in paragraph 1(c) above, as of the Effective Date, Pixel Labs shall: i) cease making its news site available at any URL and domain name incorporating the mark RIPPLE after the Effective Date, including, but not limited to ripple.co, ripple.info, ripple.biz, ripple.news, rippleglobal.net and ripplenetwork.com, and any other domain name incorporating the RIPPLE Mark; ii) not use the term RIPPLE as a trademark, trade name, or product name, within any of its news sites, except in conjunction with and immediately adjacent to the word NEWS in a similar font; iii) ensure that neither it, nor its officers, directors or employees acquire on behalf of Pixel Labs or for the benefit of Pixel Labs any URL or trademark utilizing or incorporating the mark RIPPLE, except as permitted by this Agreement. It shall not be considered a breach of this Agreement if a third party, including a user of the Pixel Labs Goods and Services, uses the term "ripple," in a non-trademark use, and Pixel Labs shall not be liable under this Agreement for any actions of third parties including its users. However, if Pixel Labs becomes aware of improper trademark use of "Ripple" (e.g. if Ripple Labs notifies Pixel Labs of such improper use), Pixel Labs will take reasonable steps to remove such improper trademark use of "Ripple" that appears on its website. Nothing herein shall be construed as requiring Pixel Labs to search or monitor its website for any such uses by third parties who post content onto Pixel Labs' website.

(e)     Subject to the Paragraph 1(i) below, Pixel Labs shall be allowed to use its ripple.info, ripple.biz, ripple.news, rippleglobal.net, and ripplenetwork.com domains (the "Transferred Domain Names") solely to redirect to its website at ripplenews.com for no more than one (1) month after the Effective Date, or until transferred to Ripple Labs, whichever occurs first.

(f)     Further, Pixel Labs shall include on any and all of its websites displaying the RIPPLE NEWS Mark or using said terms in a URL, an express disclaimer that it is in no way affiliated with Ripple Labs; Ripple, Inc.; Ripple.com; or any other entity owned or controlled by Ripple Labs, as may be reasonably specified by Ripple Labs.

(g)     Nothing herein shall prevent Ripple Labs from filing any future applications, whether in standard character or stylized form or incorporated with or into a design element, in connection with its Ripple Labs' Goods and Services, any related goods or services, any reasonably anticipated expansion of said Goods and Services, or any unrelated goods and services, so long as said goods and services are not the same as Pixel Labs' Goods and Services as described as of the Effective Date of this Agreement. Pixel Labs agrees to cooperate and execute any further written consents or other documents that may be reasonably requested in connection with Ripple Labs' applications to register RIPPLE, whether in standard character or stylized form or incorporated with or into a design element, in connection with its Ripple Labs' Goods and Services or any related goods or services. Each Party will bear its own costs and attorney's fees in connection with the obligations of this provision.

**(h)**     Within two (2) days after Pixel Labs' satisfactory completion of its obligations under Paragraphs 1(a), (d), (f) and (i) of the Agreement, all of which are to occur within thirty (30) days after the Effective Date, Ripple Labs will move the Court to dismiss with prejudice the claims against Pixel Labs and Razmig Hovaghimian and retain jurisdiction to enforce this Settlement Agreement.  Such dismissals shall not excuse Pixel Labs or Hovaghimian from any other obligations arising from or under this Agreement, regardless of whether such obligations could be performed prior to or after the date of the dismissals.  Within two (2) business days of the Effective Date, Ripple Labs will provide Pixel Labs a signed motion or stipulation for dismissal (in a form acceptable to Ripple Labs) suitable for carrying out the dismissal described herein, to be held in escrow by Cooley LLP for Pixel Labs. Should Ripple Labs fail to timely move the Court to dismiss the claims under this paragraph, and upon five (5) days notification to Ripple Labs' counsel, Pixel Labs may proceed to file the signed motion for dismissal that was being held in escrow.  However, should Pixel not comply with any requirement herein, Cooley LLP shall not be authorized to file said Motion or Stipulation for Dismissal.

**(i)**     Except as set forth in paragraph 1(c) above, within one (1) week after the Effective Date, Ripple Labs shall purchase from Pixel Labs (and to the extent Razmig Hovaghimian is currently the registrant or owner,  Razmig Hovaghimian will assign and transfer to Ripple Labs) all of their domain names that incorporate or feature the term "ripple," including, but not limited to the Transferred Domain Names (ripple.co, ripple.info, ripple.biz, ripple.news, rippleglobal.net and ripplenetwork.com) for a payment equal to Pixel Labs' and/or Razmig Hovaghimian's expenses in obtaining the domain names, not to exceed an aggregate amount of $14,000.00 (adequate proof of which has already been provided).  Pixel Labs and Razmig Hovaghimian have an obligation hereunder to transfer all Transferred Domain Names to Ripple Labs within two (2) weeks of the Effective Date. Ripple Labs has an obligation hereunder to make the payment required in this paragraph within two (2) weeks after Pixel Labs successfully transfers all such domain names.  Payment may be made by Ripple Labs to Cooley LLP, who shall hold said monies in escrow, pending the transfer of the Transferred Domain Names. Consistent with Paragraph 1(e) above, Pixel and Ripple Labs (whoever controls said domains) will configure the Transferred Domain Names so that they display no content and only redirect users to the ripplenews.com website for a period of no more than one (1) month after the Effective Date, after which time they will disabled or used for the benefit of Ripple Labs.  Ripple Labs agrees that it will not make any changes to the redirect functionality of the Transferred Domain Names or to their email configurations for a period not to exceed one (1) month from the Effective Date. Ripple Labs will not intentionally view or intercept any emails intended for the email addresses previously associated by Pixel Labs with the Transferred Domain Names; however, Pixel Labs acknowledges that certain traditional system account names (e.g. admin, postmaster, etc.) may be the same as what Pixel used, and therefore Ripple Labs will not be in breach of its obligations under this provision if it uses such traditional system account names and/or receives e-mails through same. Within five (5) days of Pixel Labs initiating the domain name transfer process of all Transferred Domain Names, the parties will jointly notify the Court that the parties have reached a tentative settlement, which requires one or both of the parties to take certain actions that are expected to be completed within 14 days, and request a stay of all dates pending completion of those actions

**(j)**     Should the Parties become aware of any actual confusion among the consuming public resulting from the concurrent use by the Parties of their respective marks, the Parties shall

4.

take reasonable measures to redirect such consumers to the proper Party and shall reasonably cooperate with each other in good faith to take reasonable measures to prevent further confusion. The Parties further agree that:

        **(i)**     Neither Pixel Labs nor Hovaghimian will in any way attempt to associate itself with Ripple Labs or its goods and/or services, and Ripple Labs will not in any way attempt to associate itself with Pixel Labs nor Hovaghimian or their goods and/or services;

        **(ii)**     In the event that any Party receives a misplaced customer inquiry regarding the other Party's goods and/or services, such Party will properly direct the customer to the correct Party, and provide written notice of the same to the other Party within ten (10) business days.

        **(iii)**     The Parties will make best efforts to avoid confusion in the media and elsewhere.  If a third party mistakenly confuses Pixel Labs and Ripple Labs, the Parties will make reasonable efforts to correct that confusion.

Subparagraph 1(j) above shall not create obligations between Pixel Labs and Hovaghimian with regard to any matters not involving the RIPPLE marks.

**2.**     **Release.** In consideration of and conditioned upon the fulfillment of the terms of this Agreement, each of the Parties, on its own behalf, and, except as set forth herein, on behalf of each of its respective principals, founders, members, officers, directors, employees, agents, subsidiaries, successors, and assigns ("Releasors") does hereby release and forever discharge the other Party and each of its respective principals, founders, officers, directors, employees, agents, subsidiaries, successors, and assigns (the "Released Parties") from the claims, actions, causes of action, damages, losses, costs and expenses, asserted in the Action.   Moreover, notwithstanding the foregoing, the releases set forth in this Section 2 do not include a release of any agreements, rights, or obligations created in this Agreement. In furtherance of the intention of the releases granted by the Parties under the Agreement, the Parties hereby expressly and mutually waive any and all claims conferred upon the Parties by the provisions of Section 1542 of the California Civil Code, or comparable provision of other state law, and each Party expressly consents that the Agreement shall be given full force and effect according to each and all of its express terms and provisions, including those related to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action hereinabove specified.  Section 1542 provides:

        "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

The Parties acknowledge that each Party may hereafter discover claims or facts in addition to or different from those which each Party now knows or believes to exist with respect to the subject matter of the Agreement and which, if known or suspected at the time of executing the Agreement, may have materially affected the settlement embodied in the Agreement.  Each Party

hereby waives any right, claim or cause of action that might arise as a result of such different or additional claims or facts.  Each Party acknowledges that it understands the significance and consequence of such release and such specific waiver of Section 1542, or comparable provision of other state law, which has been explained to each Party by its counsel.

**3.     Entire Agreement; Severability; Fees and Costs; Choice of Law and Forum.**  This Agreement constitutes the entire understanding between the Parties regarding the subject matter (into which all prior negotiations, commitments, representations, inducements and undertakings with respect to the subject matter hereof are merged), and except as provided herein, there are no other oral or written undertakings or agreements between the Parties relating to the subject matter hereof.  The terms of this Agreement may not be amended, altered, modified, or otherwise changed except by the mutual consent of the Parties in writing.  If any provision or any part of any provision of this Agreement is determined by a court to be unenforceable, the Parties shall deem the provision to be modified to the extent necessary to allow it to be enforced to the extent permitted by law, or if it cannot be modified, the provision will be severed and deleted from this Agreement, and the remainder of the Agreement will continue in effect.  The Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware.   Each Party shall bear its own attorney's fees and costs in connection with this Agreement.  The Parties herein agree that any dispute relating to or arising from this Agreement, or the subject matter of this Agreement, shall be brought before the Court retaining jurisdiction over the terms of this Settlement.

**4.     Binding Effect; Assignment.**  This Agreement is binding upon, and shall be assignable by either Party to, any successor-in-interest, permitted assignee, or any person or entity that acquires all, or substantially all, of the business assets and goodwill in the RIPPLE marks associated with each Party referenced in this Agreement, without further agreement or permission by the other Party subject to the provisions of this Agreement.  Notwithstanding the foregoing, Pixel Labs and its successors and assigns may only assign the RIPPLE NEWS Mark, and other rights arising under this Agreement, provided the successor or assign does not offer goods and services that are the same as, or related to, Ripple Labs' Goods and Services. To be clear, if the successor or assignee uses the RIPPLE NEWS Mark in connection with any of the Ripple Labs Goods and Services, any assignment and this Agreement shall become void. Each Party may sub-license this Agreement only to any of its affiliated entities or any company under the common control of its parent corporation without further permission.

**5.     Representations; Warranties.**  Each Party represents and warrants that it has reviewed and executed this Agreement freely, fully intending to be bound by the terms and provisions contained herein, and that it has full power and authority to execute, deliver and perform this Agreement.  Each Party further acknowledges that it has had the opportunity to consult with counsel and to seek counsel's advice with respect to the negotiation and execution of this Agreement.

**6.     Breach.**   If at any time a Party believes that the other Party has breached a provision of this Agreement, the Party that believes a breach has occurred shall notify the other Party in writing of the alleged breach.  For avoidance of doubt, Ripple Labs shall notify Pixel Labs c/o Mr. Hovaghimian at the address above by overnight courier (e.g., Federal Express), with an

email copy to razmigH@gmail.com, if it believes a breach of this Agreement has occurred and Pixel Labs shall notify Brad Garlinghouse at the address above if it believes a breach has occurred.  Upon receipt of such notice, the other Party shall have twenty (20) business days to correct the breach, and no legal action may be taken prior to the expiration of this notice period. Prior to initiating any legal proceedings and within said twenty (20) day window, the Parties agree that their principals will meet for a face-to-face meeting and attempt an informal mediation prior to initiating any legal action against one another.

**7.    Counterparts.**  This Agreement may be executed in identical counterparts with the same force and effect as if the signatures were all set forth on a single instrument.  This Agreement is deemed to be executed and effective as of the last date on which a Party signs a counterpart to this Agreement.

*     *     *     *

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be signed on the day, month and year set forth below each of the Parties signatures hereto.

**Pixel Labs, Inc.**

By: ██████████████

Name: Razmig Hovaghimian

Title: CEO

Date: Nov 1 _____, 2016

**Ripple Labs, Inc.**

By: ██████████████

Name: Brad Garlinghouse

Title: President

Date: Nov 4 _____, 2016

Razmig Hovaghimian

By: ██████████████

Name: Razmig Hovaghimian

Date: Nov 1 _____, 2016

COOLEY, LLP, Only as to Escrow Obligation

By: _____

Name: MARCUS PETERSON

Date: Nov 1 _____, 2016

COZEN O'CONNOR, Only as to Dismissal Obligation

By: _James A. Gale_____

Name: _____

Date: _____, 2016

8.

**Exhibit A**

Ripple Labs Trademark Registrations

| Mark | Country | Appl. Date. | Reg. Date | Appl. No. | Reg. No. | Class and Goods Services |
|---|---|---|---|---|---|---|
| **RIPPLE** | **United States** | **8/30/2013** | **5/20/2014** | **86052959** | **4532726** | **Class 9:** Computer programs and computer software for electronically trading traditional currency and virtual currency; computer software, namely, electronic financial platform that accommodates payment and financial transactions; computer hardware for transmitting virtual currency and traditional currency between computers via a peer-to-peer computer network; downloadable electronic data files featuring transferrable electronic cash equivalent units having a specified cash value |
| **RIPPLE** | **United States** | **8/30/2013** | **5/13/2014** | **86052973** | **4528772** | **Class 36:** Currency exchange services; on-line real-time currency trading; cash management, namely, facilitating transfers of electronic cash equivalents; virtual currency exchange transaction services for transferrable electronic cash |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | equivalent units having a specified cash value; electronic funds transfer, namely, transmission of currency via computer terminals and electronic devices; electronic funds transfer, namely, transmission of virtual currency and digital currency via electronic communication networks |
| **RIPPLE** | **United States** | **11/8/2012** | **12/24/2013** | **85774758** | **4453543** | **Class 36:** Financial services, namely, providing secure payment options to members of an online community via a global computer network through the use of traditional currency and virtual currency |
| **RIPPLE** | **United States** | **8/30/2013** | **5/20/2014** | **86052980** | **4532727** | **Class 38:** Peer-to-peer network computer services, namely, electronic transmission of financial data via computer terminals and electronic devices; transmission of financial information by electronic communications networks |
|  | **United States** | **8/30/2013** | **5/20/2014** | **86052907** | **4532723** | **Class 9:** Computer programs and computer software for electronically trading traditional currency and virtual currency; |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | computer software, namely, electronic financial platform that accommodates payment and financial transactions; computer hardware for transmitting virtual currency and traditional currency between computers via a peer-to-peer computer network; downloadable electronic data files featuring transferrable electronic cash equivalent units having a specified cash value |
|  | United States | 8/30/2013 | 5/13/2014 | 86052926 | 4528771 | **Class 36:** Currency exchange services; on-line real-time currency trading; cash management, namely, facilitating transfers of electronic cash equivalents; virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value; electronic funds transfer, namely, transmission of currency via computer terminals and electronic devices; electronic funds transfer, namely, transmission of virtual currency and digital currency via electronic communication |

| | | | | | | networks |
|---|---|---|---|---|---|---|
|  | **United States** | **8/30/2013** | **5/20/2014** | **86052944** | **4532724** | **Class 38:** Peer-to-peer network computer services, namely, electronic transmission of financial data via computer terminals and electronic devices; transmission of financial information by electronic communications networks |
| **RIPPLE LABS** | **United States** | **3/27/2015** | **11/3/2015** | **86578952** | **4845538** | **Class 36**: Currency exchange services; on-line real-time currency trading; cash management, namely, facilitating transfers of electronic cash equivalents; virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value; electronic funds transfer, namely, transmission of currency via computer terminals and electronic devices; electronic funds transfer, namely, transmission of virtual currency and digital currency via electronic communication networks |
| **RIPPLE LABS** | **United States** | **3/30/2015** | **10/27/2015** | **86581262** | **4841452** | **Class 38**: Peer-to-peer network |

| | | | | | | |
|---|---|---|---|---|---|---|
| | **States** | | | | | computer services, namely, electronic transmission of financial data via computer terminals and electronic devices; transmission of financial information by electronic communications networks |
| rippleLabs | **United States** | **3/30/2015** | **5/10/2016** | **86581025** | **4949375** | **Class 36**: Currency exchange services; on-line real-time currency trading; cash management, namely, facilitating transfers of electronic cash equivalents; virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value; electronic funds transfer, namely, transmission of currency via computer terminals and electronic devices; electronic funds transfer, namely, transmission of virtual currency and digital currency via electronic communication networks |
| rippleLabs | **United States** | **3/30/2015** | **5/10/2016** | **86581311** | **4953955** | **Class 38:** Peer-to-peer network computer services, namely, electronic transmission of financial data via computer |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | terminals and electronic devices; transmission of financial information by electronic communications networks |
| **RIPPLE TRADE** | **United States** | **3/24/2014** | **5/26/2015** | **86230658** | **4744898** | **Class 36**: Currency exchange services; on-line real-time currency trading; cash management, namely, facilitating transfers of electronic cash equivalents; virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value; electronic funds transfer, namely, transmission of currency via computer terminals and electronic devices; electronic funds transfer, namely, transmission of virtual currency and digital currency via electronic communication networks |
| **RIPPLE TRADE** | **United States** | **3/24/2014** | **5/26/2015** | **86230662** | **4744899** | **Class 38**: Peer-to-peer network computer services, namely, electronic transmission of financial data via computer terminals and electronic devices; transmission of financial information by |

| | | | | | | electronic communications networks |
|---|---|---|---|---|---|---|
| **RIPPLE TRADE** | **United States** | **3/24/2014** | **12/8/2015** | **86230653** | **4867705** | **Class 42**: Services in the nature of software as a service featuring computer software platforms for financial trading transactions |
| **RIPPLE COMMUNICATIONS** | **United States** | **10/4/2012** | **12/24/2013** | **85746224** | **4453376** | **Class 36**: Financial services and financial transaction services, namely, providing secure commercial transactions and payment options |
| **RIPPLE COMMUNICATIONS** | **United States** | **10/4/2012** | **8/27/2013** | **85746235** | **4390999** | **Class 38**: Telecommunication services, namely, telephone and conference calling services; providing electronic telecommunication connections for meetings; electronic voice messaging services, namely, the recording and subsequent transmission of voice messages by telephone; providing telephone services with various features, namely, discussion groups, forums, chat rooms, electronic bulletin boards for transmission of messages among users |

| | | | | | | |
|---|---|---|---|---|---|---|
|  | **United States** | **3/26/2015** | **11/10/2015** | **86577810** | **4850428** | **Class 9:** Computer programs and computer software for electronically trading traditional currency and virtual currency; computer software, namely, electronic financial platform that accommodates payment and financial transactions; computer hardware for transmitting virtual currency and traditional currency between computers via a peer-to-peer computer network; downloadable electronic data files featuring transferrable electronic cash equivalent units having a specified cash value |
|  | **Unites States** | **3/26/2015** | **11/10/2015** | **86577900** | **4850434** | **Class 36:** Currency exchange services; on-line real-time currency trading; cash management, namely, facilitating transfers of electronic cash equivalents; virtual currency exchange transaction services for transferrable electronic cash equivalent units having a specified cash value; electronic funds transfer, namely, transmission of currency via computer terminals and electronic devices; electronic |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | funds transfer, namely, transmission of virtual currency and digital currency via electronic communication networks |
|  | **United States** | **3/26/15** | **11/10/2015** | **86577933** | **4850437** | **Class 38:** Peer-to-peer network computer services, namely, electronic transmission of financial data via computer terminals and electronic devices; transmission of financial information by electronic communications networks |



 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Oct 19 03:31:02 EDT 2016*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

 ripple news

| | |
|---|---|
| **Word Mark** | **RN RIPPLE NEWS** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Providing news in the nature of current event reporting specific to stories selected by the consumer. FIRST USE: 20130915. FIRST USE IN COMMERCE: 20140128 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 86177581 |
| **Filing Date** | January 28, 2014 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 5, 2014 |
| **Registration Number** | 4623819 |
| **Registration Date** | October 21, 2014 |
| **Owner** | (REGISTRANT) RIPPLE NEWS, INC. CORPORATION DELAWARE 1595 Pacific Avenue, Suite 510 San Francisco CALIFORNIA 94109 |
| | (LAST LISTED OWNER) PIXEL LABS, INC. CORPORATION DELAWARE 2407 HARRISON STREET #3 SAN FRANCISCO CALIFORNIA 94110 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | John Paul Oleksiuk |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NEWS" APART FROM THE MARK AS SHOWN |
| **Description of Mark** | Color is not claimed as a feature of the mark. The mark consists of the showing of the stylized letters "RN" together with the words "RIPPLE NEWS" to the right of the stylized "RN". |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |

**EXHIBIT B**

**Live/Dead Indicator**  LIVE

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**EXHIBIT B**

# United States of America

## United States Patent and Trademark Office

 ripple news

**Reg. No. 4,623,819**

**Registered Oct. 21, 2014**

RIPPLE NEWS, INC. (DELAWARE CORPORATION)
1595 PACIFIC AVENUE, SUITE 510
SAN FRANCISCO, CA 94109

**Int. Cl.: 41**

FOR: PROVIDING NEWS IN THE NATURE OF CURRENT EVENT REPORTING SPECIFIC
TO STORIES SELECTED BY THE CONSUMER, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

**SERVICE MARK**

FIRST USE 9-15-2013; IN COMMERCE 1-28-2014.

**PRINCIPAL REGISTER**

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "NEWS", APART FROM THE
MARK AS SHOWN.

THE MARK CONSISTS OF THE SHOWING OF THE STYLIZED LETTERS "RN" TOGETHER
WITH THE WORDS "RIPPLE NEWS" TO THE RIGHT OF THE STYLIZED "RN".

SER. NO. 86-177,581, FILED 1-28-2014.

ELLEN PERKINS, EXAMINING ATTORNEY



**Deputy Director of the United States**
**Patent and Trademark Office**

**EXHIBIT B**